**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| ROSA I. C., <br><br> Plaintiff, <br><br> v. <br><br> FRANK J. BISIGNANO,[1] <br> Commissioner of Social Security, <br><br> Defendant. | No. 2:25-cv-02847-BFM <br><br> **MEMORANDUM OPINION AND ORDER** |

## I.    PROCEDURAL HISTORY

In March 2022, Plaintiff Rosa I. C.[2] applied for Disability Insurance Benefits and Supplemental Security Income; she alleged that she had been disabled since June 11, 2020, based on right shoulder stiffness and pain, pain in both hands and in her left shoulder, right knee pain, high blood pressure, and diabetes. (ECF 9 (Administrative Record ("AR")) at 280-99, 345.) Plaintiff's

---

[1] Frank J. Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he is hereby substituted for Kilolo Kijakazi as the defendant in this suit.

[2] In the interest of privacy, this Memorandum Opinion and Order uses only the first name and last initial of the non-governmental party in this case.

applications were denied at the initial level of review and on reconsideration, so she requested a hearing before an Administrative Law Judge. (AR 71-154, 177.)

On April 11, 2024, an ALJ held a hearing and heard from Plaintiff and a vocational expert. (AR 43-70.) After considering the evidence, the ALJ issued a partially favorable decision, finding Plaintiff became disabled as of April 1, 2024—two months before Plaintiff's 55th birthday—based on her age, education, work experience, and residual functional capacity ("RFC").[3] (AR 22-34.) The ALJ found Plaintiff not disabled for the period between June 11, 2020, and March 31, 2024. (AR 27, 31-33.)

With respect to that period, the ALJ found at step two of the disability analysis[4] that Plaintiff suffered from the following severe impairments: lumbar and cervical degenerative disc disease, right shoulder full-thickness tear with tendinopathy (status post arthroscopy), left shoulder overuse syndrome, bilateral thumb osteoarthritis, hand degenerative joint disease, diabetes, hypertension, and obesity. (AR 25-26.) The ALJ found Plaintiff retained a RFC for light work limited to: (1) occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, crawling, and reaching overhead with the right upper extremity; (2) frequently reaching overhead with the left upper extremity, and handling and fingering with the bilateral upper extremities; and (3) never climbing ladders, ropes, or scaffolds. (AR 27.) At step four, the ALJ found Plaintiff would be unable to perform her past relevant work. (AR 31.) At step five, the ALJ found that, as to the period before April 1, 2024, a person with

---

[3] An RFC is what a claimant can still do despite existing exertional and nonexertional limitations. *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[4] A five-step evaluation process governs whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)-(g)(1), 416.920(a)-(g)(1). Only the steps relevant to the issues raised are discussed herein.

2

Plaintiff's RFC would be capable of performing work that exists in significant numbers in the national economy. (AR 31-33.)

For the period beginning on April 1, 2024, the ALJ found that Plaintiff moved into the age category for individuals of advanced age, and that after that date, the Medical Vocational guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 ("the Grids"), directed a finding that Plaintiff was disabled. (AR 31-33 (citing Grid Rule 202.06).)

On February 12, 2025, the Appeals Council denied Plaintiff's request to review the ALJ's decision, making the ALJ's decision final. (AR 1-3, 277-79.) Dissatisfied with the Agency's resolution of her claim, Plaintiff filed a Complaint in this Court. For the reasons set forth below, the Court determines that the ALJ's decision should be reversed and this matter should be remanded for further administrative proceedings.

## II.    STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to deny benefits to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence. . . is 'more than a mere scintilla.' It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citations omitted); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). "If the

3

evidence can reasonably support either affirming or reversing," the Court may not substitute its judgment for that of the Commissioner. *Id.* at 720-21.

## III. DISCUSSION

In this Court, Plaintiff makes two arguments concerning the ALJ's denial of her claim for benefits: (1) the ALJ failed to evaluate properly the medical opinions offered by Dr. Tomas Saucedo and Dr. Matthew Longacre; and (2) the ALJ impermissibly rejected Plaintiff's testimony concerning her impairments and symptoms. (ECF 14 ("Pl. Br.") at 3-11.) As set forth below, the Court **reverses** the ALJ's decision based on the second issue and thus declines to reach the first one.

## A. The ALJ's Reasoning for Discounting Plaintiff's Subjective Complaints is Inadequate

Plaintiff argues that the ALJ inadequately explained his reasons for discounting her subjective complaints. (Pl.'s Br. at 8-11.)

### 1. Legal Framework

Where a claimant testifies about subjective medical symptoms, an ALJ must evaluate such testimony in two steps. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could "reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citation and quotation marks omitted).

Second, if the claimant meets that first standard and there is no evidence of malingering, the ALJ can reject the claimant's testimony only by offering "specific, clear and convincing reasons for doing so." *Id.* (citation and internal quotation marks omitted). An ALJ "is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to the Social Security Act." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (citation and internal quotation marks omitted). At the

4

same time, when an ALJ rejects a claimant's testimony, he must "specify which testimony [he] finds not credible, and then provide clear and convincing reasons, supported by evidence in the record," to support that determination. *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015). General or implicit findings of credibility will not suffice; the ALJ must show his work. *Smartt*, 53 F.4th at 499; *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014).

The sufficiency of an ALJ's explanation should be judged in light of its purpose—ensuring that this Court's review is "meaningful." *Brown-Hunter*, 806 F.3d at 489. That is, the explanation must be "'sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony[.]'" *Id.* at 493 (citation omitted).

Judged by that standard, the ALJ's reasons and explanation for discounting Plaintiff's subjective complaints were inadequate.

## 2.    Factual Background

Plaintiff testified that she has "lots of pain everywhere"—in her neck, shoulders, hands, lower back, "everywhere." (AR 57-59.) She continues to suffer right shoulder pain even after her shoulder surgery (AR 57) and has neck pain that goes down her shoulder and to her lower back (AR 56). Plaintiff developed symptoms in her left shoulder because she relied on that arm more after the surgery. (AR 58.) She was taking pain medication (Naproxen) at least twice a day, used Diclofenac cream, and took Tramadol "maybe" two times a week, which helps "a little." (AR 55-56, 59.)

Plaintiff explained that reaching above her shoulder with her left arm was painful. (AR 54.) She required her family's help with retrieving things in cabinets above her shoulders and with lifting. (AR 54.) For the first six months after her surgery, she could not lift even a cup. (AR 58.) By the time of the

5

hearing, she could lift a gallon of milk using both hands, but it was difficult. (AR 58.) Plaintiff stated that she drives "very little" and cannot sit for long periods because of her pain. (AR 55.)

In a December 2022 Function Report form, Plaintiff said that she had constant pain in her shoulder, hands, and right elbow. (AR 387.) She said she could not do any household chores due to pain and weakness in her hands, and that she needed help with routine tasks like showering, drying herself, dressing, and brushing her hair. (AR 387-89.) She had difficulty standing for more than 20 minutes, walking for more than 30 minutes, and could not lift or reach due to shoulder pain. (AR 392.)

The ALJ summarized Plaintiff's hearing testimony and her written statements. (AR 27-28.) After reciting that testimony, he concluded that while Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms," her statements concerning the intensity, persistence and limiting effects of those symptoms were not fully supported "for the reasons explained in this decision." (AR 28.)

The ALJ then proceeded to consider the medical evidence in the record. (AR 28-29.) The balance of his analysis does not discuss Plaintiff's testimony.

**3.    Analysis**

The ALJ's reasoning in this case is inadequate. An ALJ is required to "identify the testimony she or he finds not to be credible and must *explain* what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (emphasis added). Here, however, the ALJ merely summarized Plaintiff's testimony, summarized the medical records, and then concluded that the record did not support Plaintiff's allegations. In doing so, the ALJ here nearly replicated the error identified in *Brown-Hunter*, 806 F.3d at 494. There, the ALJ summarized the claimant's testimony, found that her statements were "not credible to the extent they [were] inconsistent with [his

RFC] assessment," summarized the claimant's medical records, and then concluded that the claimant's functional limitations were "less serious than she [had] alleged" and "did not prevent her from engaging in all work related activities." *Id.* at 491. This was error, the Ninth Circuit held, because the ALJ did not identify with specificity *what* testimony was not credible and *what* evidence undermined that particular testimony. *Id.* at 493 (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)); *see also Treichler*, 775 F.3d at 1102-03 (finding reversible error where ALJ's statement—that claimant's statements were not credible to the extent they were inconsistent with the RFC statement—failed to provide "sufficiently specific reasons" supported by evidence in the case record). Just as in *Brown-Hunter*, the ALJ's failure to "link [the claimant's] testimony to the particular parts of the record supporting her non-credibility determination [is] legal error." *Brown-Hunter*, 806 F.3d at 494.

Nor can the Court find the error harmless. Precedent requires "cautio[n] about when harmless error should be found" in this context. *Brown-Hunter*, 806 F.3d at 492 (citing *Marsh v. Colvin*, 792 F.3d 1172, 1173 (9th Cir. 2015)). The Court cannot find harmless error simply because it can infer from the whole of the decision why the ALJ decided not to credit Plaintiff's testimony. *Id.* That's because the federal court is "constrained to review the reasons the ALJ asserts." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). If the ALJ fails to specify his reasons for finding claimant testimony not credible, a reviewing court will be unable to review those reasons meaningfully without "substitut[ing] [its] conclusions for the ALJ's, or speculat[ing] as to the grounds for the ALJ's conclusions." *Brown-Hunter*, 806 F.3d at 492 (quoting *Treichler*, 775 F.3d at 1103). Because courts "cannot engage in such substitution or speculation," error of this sort "will usually not be harmless." *Id.*

Here, the error is decidedly not harmless. Simply stating that Plaintiff's testimony is fatally undermined for reasons explained elsewhere in the decision

7

does not provide the Court enough information to "discern" the "agency's path." *Treichler*, 775 F.3d at 1099; *Brown-Hunter*, 806 F.3d at 494 (declining to find error harmless where court "cannot discern the agency's path because the ALJ made only a general credibility finding without providing any reviewable reasons why she found [the claimant's] testimony to be not credible").

Defendant points to evidence that might have provided an appropriate basis for the ALJ to disregard Plaintiff's testimony concerning her pain and the limitations. (ECF 16 ("Def. Br.") at 14-19.) But *Brown-Hunter* makes clear that courts err when they usurp the ALJ's duty to try to link particular testimony to specific evidence that the ALJ might have found to undermine it. 806 F.3d at 494 (ALJ's "error could not be corrected by the district court's statement of links between claimant testimony and certain medical evidence."); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."). Put another way, the Court is constrained to review the reasons given by the ALJ, not post hoc rationalizations provided by government counsel. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

Here, while Defendant points to portions of the ALJ's decision that might rationally undermine Plaintiff's testimony, the ALJ never offered those as reasons for rejecting Plaintiff's complaints. Reversal is therefore required, because an ALJ's failure to "link [a claimant's] testimony to the particular parts of the record supporting her non-credibility determination [is] legal error." *Brown-Hunter*, 806 F.3d at 494.

Defendant also points to the sentence where the ALJ concludes his analysis by saying that "the objective medical evidence does not warrant any additional limitations beyond those established in the residual functional

8

capacity herein." (Def. Br. at 19 (quoting AR 31).) To the extent that sentence was meant to refer back to Plaintiff's testimony—which is a stretch—it still does not link any *particular* portion of the record to Plaintiff's subjective symptom testimony and thus would still flunk *Brown-Hunter*'s test.

## B.    Remedy

Remand (as opposed to an outright grant of benefits) is appropriate as the circumstances of this case suggest that further administrative proceedings could remedy the ALJ's errors. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); *Treichler*, 775 F.3d at 1101, n.5 (remand for further administrative proceedings is the proper remedy "in all but the rarest cases"); *Harman v. Apfel*, 211 F.3d 1172, 1180-81 (9th Cir. 2000) (remand for further proceedings rather than for the immediate payment of benefits is appropriate where there are "sufficient unanswered questions in the record").

Having found that remand is warranted, the Court declines to address Plaintiff's remaining argument regarding the ALJ's consideration of the medical opinion evidence. Whether the ALJ adequately considered the medical opinions in this case can be addressed, as necessary, on remand. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

9

## IV.   CONCLUSION AND ORDER

For all the foregoing reasons, IT IS ORDERED that: (1) the decision of the Commissioner is **reversed**, and this matter is **remanded** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order; and (2) Judgment be entered in favor of Plaintiff.

DATED: February 23, 2026

_____
BRIANNA FULLER MIRCHEFF
UNITED STATES MAGISTRATE JUDGE

10